**FILED**

AUG 2 7 2002

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

| | |
|---|---|
| WARREN ROHN, et ux., | NO. CIV. S-01-0602 FCD PAN |
| Plaintiffs, | NO. CIV. S-00-1628 FCD PAN |
| | NO. CIV. S-00-1629 FCD PAN |
| v. | NO. CIV. S-00-2515 FCD PAN |
| | NO. CIV. S-00-2516 FCD PAN |
| UNITED STATES OF AMERICA, | NO. CIV. S-01-0061 FCD PAN |
| Defendant. | NO. CIV. S-01-0074 FCD PAN |
| | NO. CIV. S-01-0076 FCD PAN |
| | NO. CIV. S-01-0191 FCD PAN |
| _____/ | NO. CIV. S-01-0330 FCD PAN |
| | NO. CIV. S-01-0331 FCD PAN |
| | NO. CIV. S-01-0599 FCD PAN |
| | NO. CIV. S-01-0601 FCD PAN |
| and ALL RELATED MATTERS | |
| | ORDER FOR SANCTIONS |
| _____/ | |

----ooOoo----

Plaintiffs in these related actions have brought actions under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 through 2680 against Defendant United States of America ("the Government"). Plaintiffs allege that agents and employees of the Government negligently allowed a prescribed fire started on the Government's property to escape onto the property occupied or

1

49

owned by the plaintiffs.

On July 29, 2002, this court issued an order to show cause why sanctions should not be imposed on plaintiffs' counsel, Darin Wright, for his involvement in the scheme to engage in witness tampering of one of the Government's expert witnesses. Plaintiffs' counsel filed a declaration in response to the order to show cause on August 7, 2002. The Government filed a response on August 16, 2002. A hearing on the order to show cause was held on August 26, 2002 at which plaintiffs' counsel appeared with his own counsel, James J. Banks. For the reasons below, the court finds that sanctions should be imposed on plaintiffs' counsel.

## STANDARD[1]

Federal courts have inherent powers to manage their own proceedings and control the conduct of persons appearing before them. See Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27, reh'g denied, 501 U.S. 1269, 112 S. Ct. 12, 115 L. Ed. 2d 1097 (1991). By invoking the inherent power to punish bad faith conduct that threatens the integrity of the judicial process, a court must exercise discretion in fashioning appropriate sanctions. See Chambers, 501 U.S. at 44-45, 111 S. Ct. at 2132-2133. "District judges have an arsenal of sanctions they can impose for unethical behavior" including monetary sanctions, contempt, and disqualification of counsel.

---

[1] The "Background" section has been omitted for the sake of brevity since the parties are familiar with the factual background of these cases. For further background, the court directs the reader to its July 29, 2002 order.

Erickson v. Newmar Corp., 87 F.3d 298, 303 (9th Cir. 1996).[2]

## ANALYSIS

The position of plaintiffs' counsel in response to the court's order to show cause has changed markedly regarding the conduct in question.  While Mr. Wright now expresses regret for his actions, his current position is far different from his testimony before the magistrate judge and his objections to the magistrate judge's findings and recommendations filed on behalf of plaintiffs Warren and Sandra Rohn.

In the Rohns' objections and before the magistrate judge, Mr. Wright asserted that his conduct, and the conduct of his clients, was protected by both the attorney-client privilege and the First Amendment.  Yet when the magistrate judge found that neither defense had merit, Mr. Wright did not express regret about his actions.  Far from apologizing for his behavior, he asserted that such conduct was both legal and reasonable.  In the objections filed on behalf of the Rohns, Mr. Wright asserted that parties have a right to speak with witnesses, "so long as they do not attempt to wrongly influence their testimony in doing so."

---

[2] In Shepherd v. Am. Broad. Co., 62 F.3d 1469 (D.C. Cir. 1995), the D.C. Circuit held that "for those inherent power sanctions that are fundamentally penal--dismissals and default judgments, as well as contempt orders, awards of attorneys' fees, and the imposition of fines--the district court must find clear and convincing evidence of the predicate conduct." Id. at 1478. The court has been unable to locate any Ninth Circuit authority on the standard of proof required for a district court's decision to sanction an attorney under its inherent power. However, even if the "clear and convincing" standard enunciated in Shepherd applies, the court finds that plaintiffs' counsel's underlying predicate conduct has been proved by clear and convincing evidence.  Indeed, plaintiffs' counsel has never disputed that he engaged in the conduct. Rather, he only argued that the conduct was justified.

Pls.' Objections, filed July 3, 2002, at 15. According to plaintiffs' counsel, the advertisement as well as plaintiff Marijane Poulton's phone call to the Government's expert Cheryl Mikkola did not constitute an attempt to "wrongly influence" Mikkola. Through his counsel at the hearing before the magistrate judge, Mr. Wright argued that the advertisement did not pose any threat to the integrity of the judicial process. In his declaration in response to the order to show cause, Mr. Wright continues to maintain that at the time the proposed advertisement was being formulated, he "believed the advertisement would not have influenced [Mikkola's] testimony or her willingness to testify." Wright Decl., filed August 7, 2002, at 3. As stated in its order filed July 29, 2002, the court does not find this testimony -- that Mr. Wright had no idea of the impact of the advertisement -- credible in the least.[3] Nor does the court accept his contention that the advertisement or Poulton's phone call to Mikkola was innocent. Clearly counsel and his clients attempted to wrongfully influence a witness by promoting a countywide boycott of her business.

Now, however, in response to the order to show cause, Mr. Wright expresses regret and remorse for his behavior and states that after reviewing this court's July 29, 2002 order, he *now*

---

[3] The advertisement read, in pertinent part:

> Ms. Mikkola receives $85.00 per hour to testify against the Lowden Fire victims. Do you really want a realtor who, for the right price will turn on her neighbors? When you decide to buy or sell your property, choose a realtor who supports our local communities. Choose a realtor you can respect.

The intent of the advertisement is clear on its face.

4

1  sees that his "failure to appreciate the full impact the proposed
2  advertisement could have on the judicial process constituted an
3  error in judgment." Wright Decl., filed August 7, 2002, at 3.
4  He states that he *now* realizes he should have "simply counseled
5  [his] clients to refrain from publicizing their concerns
6  regarding the government report, and, instead, address their
7  concerns in the course of the litigation." Id. at 3.  In an
8  effort to explain his conduct, Mr. Wright characterizes his
9  actions as motivated by his "frustrations and passions"
10 "boil[ing] over" and "cloud[ing] [his] judgment" Id. at 2-3.  He
11 further states that his involvement with the advertisement was
12 limited to ensuring that the advertisement was factually correct.
13 See id. at 3.  Mr. Wright contends that he did not intend to
14 violate any ethical or legal bounds and his lack of bad faith is
15 demonstrated by his decision to halt publication of the
16 advertisement once the Government's counsel indicated that the
17 Government opposed the publication of the advertisement.[4]

18     Plaintiffs' counsel also asks this court to consider that he
19 (1) represents a large number of plaintiffs in these related
20 cases and most of the settlements that have been reached are for
21 allegedly small sums compared to the amounts claimed; (2) has
22 limited his attorneys' fees to 20% of recovery, as opposed to the
23 25% allowed under the Federal Tort Claims Act; (3) has fronted
24 litigation costs for the plaintiffs; (4) assisted many of the

---

[4] The record is unclear as to why the advertisement was not run.  At the hearing before the magistrate judge, Mikkola testified that Sara Weninger, the editor of the Trinity County Journal, called Mikkola to tell her that Weninger had decided not to run the advertisement.  The court has no way of determining what or who caused Weninger to decide not to run the advertisement.

plaintiffs on a pro bono basis with other issues arising from the fire; (5) has lived in his Lewiston office, away from his family, for the past three years in order to provide moral and legal support to his clients; and (6) has received very little income from these cases over the past three years and has been prevented from taking other cases due to the time constraints imposed by his representation of the plaintiffs.[5]  At the hearing, Mr. Wright, through counsel, asked this court to consider that Mr. Wright has never been accused of professional misconduct in his nine-year career; is a solo practitioner; and took these cases when no other lawyer would.

While Mr. Wright currently professes that he has seen the error of his ways, it seems that his remorse may have more to do with the specter of monetary sanctions than a newfound appreciation of the Rules of Professional Conduct of the State Bar of California or Title 18 of the United States Code.  That Mr. Wright may have suffered some hardships in connection with the representation of the plaintiffs in these cases does not excuse his conduct.  Nor does his personal or emotional involvement with his clients allow him to abandon the ethics of his profession and engage in witness tampering.[6]  Moreover, the court finds Mr. Wright's characterization of his behavior as

---

[5] However at the hearing, Mr. Wright stated that he has approximately twenty other clients whom he represents in matters involving real estate transactions and wills and trust.

[6] Mr. Wright's assertion that some of his clients have settled for far less than their original claims, implying that his clients have given up monies belonging to them, similarly does not sway this court.  Those plaintiffs that settled made a conscious decision to do so.  If they felt the settlement was not equitable, they could have chosen not to settle.

6

being in the "heat of passion" contradicted by the record.

On May 3, 2002, Mr. Wright faxed documents to plaintiff Connor Nixon which purported to be documents from the report showing the involvement of Mikkola. On May 10, 2002, plaintiffs' counsel faxed a letter addressed to "Connor/Gary/Jesse" which stated that Jesse Rogers had faxed Mr. Wright a copy of the "letter" to be printed in the Trinity Journal. In that fax, Mr. Wright offered several substantive suggestions for revision, including the revision of several paragraphs. See Privilege Log, filed June 4, 2002, Ex. 2. Indeed, at the hearing held before the magistrate judge on June 6, 2002, Mr. Wright admitted that his involvement in the revision of the advertisement consisted of more than just "factual corrections." On May 16, 2002, after receiving an email from Marijane Poulton asking if the letter was a "go," Mr. Wright replied "It's a go" and thanked Poulton for her "work on this matter."

Mr. Wright's fax of May 3, 2002 likely provided the stimulus for the advertisement. The drafting and revision of the advertisement took place over the course of approximately a week. The record clearly demonstrates that this advertisement was the result of forethought and planning.[7] Far from an act of "passion," plaintiffs' counsel's involvement was deliberate and premeditated.

The advertisement was to be published in the Trinity County

---

[7] For pertinent text of the advertisement, see supra at 4 n.3.

7

Journal, the only newspaper serving the sparsely populated area.[8] As this court has previously found, the quarter-page advertisement was clearly intended either to punish Mikkola for testifying or induce her not to testify by soliciting a boycott of her business by residents of Trinity County. If the scheme which led to the advertisement had been successful, Mikkola's business would have been severely damaged if not destroyed. The egregious nature of counsel's conduct and the clear threat posed to the judicial process is patent.

It is noteworthy that one plaintiff, Paul Schmidt, the Trinity County Sheriff, would not allow use of his name on the advertisement. The court finds it difficult to believe that Sheriff Schmidt understood the dangers of this conduct and Mr. Wright did not. If, however, plaintiffs' counsel in fact did not understand, as he argues, the court is extremely concerned about Mr. Wright's representation of clients before this court or any other court. This concern is magnified by Mr. Wright's failure to recognize that he exposed not only himself but his own clients to possible criminal liability.[9]

As indicated above, the court has a range of sanctions available to it, including (1) instituting proceedings to disbar Mr. Wright from this district; (2) disqualifying Mr. Wright from these cases; (3) instituting criminal contempt proceedings; (4)

---

[8] As noted in the court's prior order, the population of Trinity County is approximately 13,500.

[9] Witness tampering of this type is subject to criminal liability under 18 U.S.C. § 1512(c).

monetary sanctions[10]; and (5) lesser sanctions.

The court believes that sanctions are necessary for several reasons. First, Mr. Wright's conduct is deserving of sanctions. Second, failure to sanction Mr. Wright's conduct could serve as a signal to other attorneys that this court will not disapprove of this type of deplorable conduct, and could even indicate tacit acceptance of such conduct if the perpetrator exhibits remorse.

While sanctions will be imposed, in light of Mr. Wright's lengthy involvement as counsel for the plaintiffs,[11] the court finds disbarment or disqualification at this stage of the litigation unfairly prejudicial to Mr. Wright's clients. However, the court does believe that other sanctions will cause plaintiff's counsel to reflect on his professional responsibilities and, in turn, will serve to modify future conduct.[12]

---

[10] The court notes that California Business and Professions Code § 6068(o)(3) imposes a duty upon an attorney to report sanctions over $1,000.00 to the State Bar and § 6086.7(c) imposes a duty upon a court to notify the State Bar of sanctions over $1,000.00.

[11] Mr. Wright's involvement with these cases has lasted for at least three years.

[12] While Mr. Wright attests that he has not received substantial fees in connection with these cases, he has made no effort to quantify the fees he has received to date. Therefore, the sanctions imposed have no relationship to the fees received. Instead, the court must impose sanctions that reflect the seriousness of plaintiffs' counsel's conduct.

However, at the request of the court, the Government provided the following information about the settlements in these cases:

    A.    Total Completed Administrative Settlements $1,052,197.66
    B.    Total Administrative Settlements Awaiting Final

(continued...)

**CONCLUSION**

The following is hereby ordered:

1. Counsel shall pay sanctions in the amount of **$15,000.00.** Payment should be in the form of a check made payable to The Clerk Of The Court. The sum is to be paid personally by plaintiffs' counsel **not later than ninety (90) days** from the filing of this Order for Sanctions. **Not later than one hundred (100) days** from the filing of this Order, plaintiffs' counsel shall file a declaration attesting that he has paid the $15,000.00 sanction.

2. This sanction is personal to the attorney, is to be borne by him personally, and is not to be transmitted

---

[12](...continued)
   Approval  $1,903,923.15
C. Total Verbal Settlements Awaiting Signed
   Agreements and Final Approval $172,100.00
D. Total Completed Settlements of District Court Case
   $256,629.55
E. Total of All Settlements **$3,384,850.36**

Notice of Information, filed August 21, 2002. At the hearing, Mr. Wright represented that he has advanced his clients' costs in the total amount of approximately $500,000, which will be taken out of the total recovery before Mr. Wright's fees are calculated. Therefore, if Mr. Wright's fee is 20% of the total recovery less the costs, once all the settlements are approved, he will have collected $576,970.07 in fees ([$3,384,850.36 - $500,000] x 20%) as well as being reimbursed for the $500,000 in costs that he has advanced.

At the hearing, Mr. Wright indicated that there are five other administrative cases and seven other cases before this court which have not reached any understanding as to settlement. While the court will not speculate on the value of these remaining twelve cases, it is likely that they will result in the generation of even more, possibly substantially more, fees for plaintiffs' counsel. Based on this information, the court is skeptical of counsel's claim that he has not received substantial fees in connection with these cases.

to his clients by way of a charge of attorney's fees and/or costs.

3. Counsel shall read the Rules of Professional Conduct of the State Bar of California in their entirety **within thirty (30) days** of the filing of this Order for Sanctions. **Not later than forty (40) days** from the filing of this Order, plaintiffs' counsel shall file a declaration attesting that he has read the Rules.

4. Counsel shall complete twenty hours of continuing legal education in professional ethics **within one hundred eighty (180) days** of the filing of this Order. This may include attending CLE courses or law school lectures or reading treatises or books. **Not later than one hundred ninety (190) days** from the filing of this Order, plaintiffs' counsel shall file a declaration attesting to his completion of the twenty hours, including providing the names and dates of the CLE courses or law school lectures attended or the titles and authors of treatises or books read.

5. Pursuant to California Business and Professions Code § 6068(o)(3), counsel shall report these sanctions to the California State Bar Association **within thirty (30) days** of the filing of this Order. **Not later than forty (40) days** from the filing of this Order, plaintiffs' counsel shall file a declaration attesting that he has reported these sanctions to the California State Bar Association.

6. Pursuant to California Business and Professions Code §

11

| | |
|---|---|
| 1 | 6086.7(c), this court shall report the sanctions |
| 2 | imposed on counsel to the California State Bar |
| 3 | Association. |
| 4 | 7.  These related cases are set for a further status |
| 5 | hearing on February 21, 2003 at 10 a.m. |

IT IS SO ORDERED.

DATED: August 27, 2002.

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

12

```
                United States District Court
                         for the
                Eastern District of California
                     August 27, 2002


           * * CERTIFICATE OF SERVICE * *


                              2:01-cv-00602
                              2:00-cv-01628
                              2:00-cv-01629
                              2:00-cv-02515
                              2:00-cv-02516
                              2:01-cv-00061
                              2:01-cv-00074
                              2:01-cv-00076
                              2:01-cv-00191
                              2:01-cv-00330
                              2:01-cv-00331
                              2:01-cv-00599
                              2:01-cv-00601
```

Rohn

    v.

USA

_____

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on  August 27, 2002, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

Darin Patrick Wills
Darin P Wright Attorney at Law
PO Box 355
Lewiston, CA  96052

Richard Pachter
Stevens and O'Connell
400 Capitol Mall
Suite 1400
Sacramento, CA  95814

Kendall J Newman
United States Attorney
501 I Street
Suite 10-100
Sacramento, CA  95814

David T Shelledy
United States Attorney
501 I Street
Suite 10-100
Sacramento, CA  95814

TM/PAN

Financial

Jack L. Wagner, Clerk

BY: DMauotte
Deputy Clerk